# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| BASKIN-ROBBINS FRANCHISING LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALAN A. CHUN,<br><br>Defendant. | Case No. 18-cv-05476-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF 19] |

Before the Court is Plaintiffs' Motion for Default Judgment ("Motion"). Motion, ECF 19. Defendant Chun has not appeared in this action. The Court previously found this matter suitable for submission without oral argument pursuant to Civil Local Rule 7-1(b). ECF 26. For the reasons stated below, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. Factual Allegations

Plaintiffs are Baskin-Robbins Franchising LLC and BR IP Holder LLC (collectively, "Plaintiffs" or "Baskin-Robbins"). Compl. ¶¶ 2–3, ECF 1. Defendant Alan A. Chun is an individual and the owner and operator of a retail Baskin-Robbins shop located in the County of San Mateo, California. *Id.* ¶ 4. This action arises out of Chun's alleged failure to comply with a franchising agreement between the parties. *Id.* ¶ 1.

Baskin-Robbins Franchising LLC is the franchisor of the Baskin-Robbins franchise system. Compl. ¶ 11. BR IP Holder LLC owns the Baskin-Robbins trademarks, service marks, trade dress, etc., including federal registrations for the mark "Baskin-Robbins." *Id.* ¶¶ 12–13. In July 2017, Chun and Plaintiffs entered into a Franchise Agreement that granted Chun a franchise

to operate a Baskin-Robbins restaurant in Foster City, California. *Id.* ¶ 18; *see also* Franchise Agreement, Ex. 1 to Compl. Under the Franchise Agreement, Chun agreed to use Plaintiffs' proprietary marks only in the manner and to the extent specifically licensed by the agreement. *See* Franchise Agreement §§ 2.4, 9. Among other obligations, the Franchise Agreement required Chun to pay a "Continuing Franchise Fee Rate" of "5.9%[] of Gross Sales," and a "Continuing Advertising Fee Rate" of "5.0%[] of Gross Sales." *See* Franchise Agreement "Contract Data Schedule"; Compl. ¶ 21.

Plaintiffs allege that Chun breached the Franchise Agreement "by failing to pay the required fees, and/or other amounts owed to Plaintiffs." Compl. ¶ 26. On June 25, 2018, Plaintiffs provided Chun with written notice of his material defaults under the Franchise Agreement and fifteen days to cure, as required by the Franchise Agreement. *Id.* ¶ 27; *see also* Notice to Cure, Ex. 2 to Compl. The Notice to Cure set forth outstanding "Franchise and Advertising Fees in the amount of $17,157.56." Notice to Cure at 1. Chun failed to cure his alleged breaches of the Franchise Agreement, and on August 27, 2018, Plaintiffs provided Chun with a written notice of termination of the Franchise Agreement. *See* Compl. ¶¶ 28–29; *see also* Notice of Termination, Ex. 3 to Compl.

According to the Complaint, Chun has continued to operate the Baskin-Robbins restaurant in question, notwithstanding Chun's non-performance under the Franchise Agreement and Plaintiffs' subsequent termination of the Franchise Agreement. Compl. ¶ 30. Arising out of these allegations, Plaintiffs assert five causes of action against Chun: (1) breach of contract (the Franchise Agreement); (2) trademark infringement under federal and state law; (3) unfair competition under federal law; (4) unfair competition and false advertising under California law; and (5) trade dress infringement. *See generally* Compl.

### B. Procedural History

Plaintiffs filed this lawsuit on September 6, 2018. *See generally* Compl., ECF 1. Defendant was served with the Complaint on September 10, 2018. *See* Certificate of Service, ECF 9. The Clerk entered Default on October 19, 2018. *See* ECF 16. Defendant has not appeared in this action, and Plaintiffs filed the instant Motion for Default Judgment on

1 December 19, 2018, *see* Motion, ECF 19.

## II. LEGAL STANDARD

Following an entry of default, Federal Rule of Civil Procedure 55(b)(2) permits a court to enter default judgment against a defendant who has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a) and 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion to enter default judgment, a district court considers seven factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) ("*Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Upon default, all factual allegations in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that he may make a calculated decision as to whether or not it is in his best interest to answer." *See Alameda County Elec. v. Banister Elec., Inc.*, 2012 WL 3042696, at *1 (N.D. Cal. July 25, 2012) (citing *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008); *Board of Trustees v. Total Air Balance Co.*, 2009 WL 1704677, at *3–5 (N.D. Cal. June 17, 2009)).

If the plaintiff is seeking money damages, the plaintiff must "prove-up" her damages. *See Orange County Elec. Indus. v. Moore Elec. Contracting, Inc.*, 2012 WL 4120348, at *3 (N.D. Cal. Sept. 18, 2012). In other words, the plaintiff must "provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Id.* (internal quotation and citation omitted). "In order to 'prove up' damages, a plaintiff is generally required to provide admissible evidence (including witness testimony) supporting damage calculations." *Cannon v. City of Petaluma*, 2011 WL 3267714, at *2 (N.D. Cal. July 29, 2011).

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court discusses in turn jurisdiction and service of process, the *Eitel* factors, and Plaintiffs' requested relief. For the reasons discussed below, Plaintiffs' motion for default judgment is GRANTED IN PART and DENIED IN PART.

## III. JURISDICTION AND SERVICE OF PROCESS

Before addressing the merits, the Court must first address its jurisdiction to enter default judgment against Mr. Chun. Subject matter jurisdiction is indisputably available under 28 U.S.C. §§ 1331, 1338, and 1367(a). This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and presents federal questions of trademark infringement and unfair competition. The Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367. The Court must also have personal jurisdiction over a defendant, or else the entry of default judgment is void. *Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423, 426 (9th Cir. 1973). Here, as discussed below, the Court is satisfied that (1) this Court has personal jurisdiction over Mr. Chun because he is a resident of this District, conducted business in this District, and the events giving rise to Plaintiffs' claims occurred in this District, and that (2) Mr. Chun has been properly served.

### A. Personal Jurisdiction

The Court is bound to follow state law in determining the bounds of its jurisdiction over parties. *See* Fed. R. Civ. P. 4(k)(1)(A); *Diamler AG v. Bauman*, 571 U.S. 117, 125 (2014). California's "long arm" statute states that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. § 410.10. California's long arm is thus coextensive with the federal standard. Residency within the state is sufficient to establish general personal jurisdiction within the forum state, as are minimum business contacts. *Burnham v. Superior Court*, 495 U.S. 604, 610–11 (1990); *International Shoe Co. v. State of Washington, Office of Unemp. Compensation & Placement*, 326 U.S. 310, 316 (1945). The Court is satisfied that personal jurisdiction exists over Mr. Chun.

4

1  Plaintiffs' complaint indicates that Mr. Chun is a California resident operating a business in Foster
2  City, California. Compl. ¶¶ 9, 18a. *In personam* jurisdiction is thus appropriate.

### B. Service of Process

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). Rule 4 is "flexible" and "should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). What is required is "substantial compliance" with Rule 4, with "neither actual notice nor simply naming the defendant in the complaint" being sufficient. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *cert. denied*, 484 U.S. 870 (1987)).

The Court is satisfied that Plaintiffs have substantially complied with Rule 4. A Notice to Cure the breach of the Franchise Agreement was served to Mr. Chun at his place of business. Notice to Cure, Ex. 2 to Compl., ECF 1. A Notice of Termination was served to Mr. Chun on August 28, 2018, at his place of business. Notice of Termination, Ex. 3 to Compl. The Clerk of Court issued a summons on September 10, 2018. ECF 7. On September 10, 2018, Plaintiffs personally served Mr. Chun with the summons, complaint, and additional documents. *See* Certificate of Service, ECF 9. Accordingly, Plaintiffs have met the service of process requirements by substantial compliance with Rule 4.

## IV. *EITEL* FACTORS AS APPLIED TO EACH CAUSE OF ACTION

For each cause of action, a plaintiff must sufficiently plead allegations for each element. *See Golden West v. Bartley*, 2017 WL 2335602, at *7 (N.D. Cal. May 30, 2017). The Court thus examines each cause of action in light of the *Eitel* factors to determine whether default judgment is appropriate.

### A. Merits of Plaintiffs' Claims and Sufficiency of the Complaint

#### 1. Breach of Contract

"A claim for breach of contract is comprised of a contract, plaintiff's performance or

5

excuse for nonperformance, defendant's breach, and the resulting damages to plaintiff." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099 (N.D. Cal. 2014) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990)). Here, Chun entered into a franchise agreement with Baskin-Robbins on or about July 26, 2017. Compl. ¶ 18. Baskin-Robbins licensed Mr. Chun to use the Baskin-Robbins trademark, trade name, and trade dress under the terms of the Franchise Agreement. *Id.* ¶ 19. Plaintiffs claim performance of all obligations of the Franchise Agreement. *Id.* ¶ 37. There is no indication to the contrary, and Mr. Chun has not appeared to dispute Plaintiffs' assertion of full performance.

Next, by entering into the Franchise Agreement, Mr. Chun agreed to use Plaintiffs' proprietary marks only to the manner and extent dictated by the terms of the Franchise Agreement. *Id*. ¶ 20. These terms included a 5.9% franchise fee, 5.0% advertising fee, late fees, and any costs resulting from default. *Id.* ¶ 21; *see also* Franchise Agreement, Ex. 1 to Compl. Under the Franchise Agreement, Chun agreed to be held in default for breaches of any terms of the agreement, including failure to pay fees, and that Baskin-Robbins could terminate the Franchise Agreement if Chun failed to timely cure any default. *Id.* ¶¶ 22–23 (citing the Franchise Agreement). The Complaint alleges that Mr. Chun breached the Franchise Agreement by failing to pay required fees and did not cure the default within the agreed upon 15 days of Notice to Cure. *Id.* ¶¶ 27–29 (citing Notice to Cure). A written Notice of Termination of the Franchise Agreement was sent to Chun in August 2018. *Id.* ¶ 29; *see also* Notice of Termination. Despite Chun's non-performance, Chun continues to operate the Baskin-Robbins shop using Plaintiffs' proprietary marks. *Id.* ¶ 30. Mr. Chun has not appeared to dispute these claims of his breach of the Franchise Agreement.

As a result of the breach, Mr. Chun caused harm and damage to Plaintiffs' goodwill, business, and reputation. *Id.* ¶ 45. These damages include mistake, confusion, or deception of the public as to the affiliation and sponsorship of the shop and its goods and services. *Id.* ¶ 31. Accordingly, Plaintiffs' have shown that Mr. Chun is liable for breaching the Franchise Agreement. The merits and sufficiency of the allegations thus favor entering default judgment on Plaintiffs' claim for breach of contract.

### 2. Trademark Infringement (15 U.S.C. § 1114)

To prove infringement of a registered trademark, a plaintiff must demonstrate that it "owns a valid mark, and thus a protectable interest" and that the defendant's "use of the mark 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (quoting *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)); *see* 15 U.S.C. § 1114(1)(a), (b). Here, Plaintiffs' allegation of ownership of "numerous federal registrations for the mark 'Baskin-Robbins' and related marks" is taken as true and is sufficient for the purposes of liability to establish ownership, *see* Compl. ¶ 13; *see also* 15 U.S.C. § 1115(a) (registration on principal register is *prima facie* evidence of validity, ownership, and exclusive right to use registered mark).

Likewise, taking the allegations in the Complaint as true, Plaintiffs have sufficiently demonstrated that Mr. Chun's use of its marks is likely to cause confusion under the factors identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979) (identifying eight factors including (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines). The *Sleekcraft* test is "a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).

Although there is no evidence of actual user confusion, Plaintiffs' showing on the other *Sleekcraft* factors is sufficiently strong to find that Mr. Chun's use of Plaintiffs' marks is likely to cause consumer confusion in violation of 15 U.S.C. § 1114, including the offering of identical or substantially identical goods and services as authorized franchisees. Compl. ¶¶ 31–33. The merits and sufficiency of the allegations thus favor entering default judgment on Plaintiffs' claim for trademark infringement in violation of 15 U.S.C. § 1114.

### 3. Unfair Competition under Federal Law (15 U.S.C. § 1125(a))

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for anyone injured by unfair competition. "The 'ultimate test' for unfair competition is exactly the same as

7

for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'" *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (internal citation omitted). Here, the marks used by Mr. Chun are not only similar, but identical to those registered to Plaintiffs. Compl. ¶ 30. Plaintiffs operate 7,800 shops worldwide, 2,500 of which are in the United States, and have served millions of customers over their sixty years of operation. *Id.* ¶ 16. Plaintiffs' marks enjoy wide recognition due to Plaintiffs' extensive sales, ads, and promotion of the marks. *Id.* ¶ 17. Defendant Chun is offering identical or substantially identical goods and services as are offered by authorized franchisees. *Id.* ¶ 32. Consumers are likely to be deceived into concluding that such identical or substantially identical products sold under unauthorized marks are subject to Plaintiffs' supervision and endorsement. *Id.* Thus, Plaintiffs have established Mr. Chun's liability for infringing Baskin-Robbins marks in violation of 15 U.S.C. § 1125(a). In sum, the merits and sufficiency of the allegations favor entering default judgment on Plaintiffs' claim for unfair competition in violation of 15 U.S.C. § 1125(a).

### 4. Unfair Competition and False Advertising under California law

Under California law, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. It is also unlawful for any entity to publicly disseminate any statement known or that ought to be known to be false or misleading in advertisements. *Id.* § 17500. The "sweeping" scope of the law and "intentionally broad" standards for wrongful business conduct allow courts "maximum discretion to prohibit new schemes to defraud." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006). To sufficiently make out these California state claims, Plaintiffs must allege that Mr. Chun's use of the proprietary marks was unlawful, unfair, or fraudulent. Plaintiffs have alleged all three.

An unlawful act is one "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674 (9th Cir. 2007) (citing *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994)). Here, Plaintiffs have satisfied the unlawful prong by showing that Mr. Chun's

8

unauthorized use of Baskin-Robbins marks in promotion of his shop violated federal laws of trademark infringement and unfair competition. *See* Compl. ¶¶ 42, 48. The standards of unfair and fraudulent business acts do not require a showing of actual deception; Plaintiffs need only allege that "members of the public are likely to be deceived" by Mr. Chun's use of proprietary marks. *In re Pomona*, 476 F.3d at 674 (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)). As discussed above, Plaintiffs sufficiently allege that Chun's unauthorized use of Plaintiffs' marks is likely to cause consumer confusion and deception. *See also* Compl. ¶¶ 30–33. Thus, the merits of the allegations favor entering default judgment for unfair competition and false advertising under Cal. Bus. & Prof. Code §§ 17200 & 17500 *et seq.*

### 5. Trade Dress Infringement

Three elements must be alleged to show trade dress infringement: (1) that the party owns a protectable non-functional trade dress; (2) that the trade dress is inherently distinctive or is distinct through secondary meaning; and (3) that the use of the trade dress creates likelihood of consumer confusion as to representation of the product. *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1172 (C.D. Cal. 2010) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998)). Here, Plaintiffs sufficiently allege all three elements. First, Plaintiffs allege ownership of functional trade dresses in its branding and packaging. *See* Compl. ¶¶ 12–13. Second, these marks are distinctive and recognizable and have gained secondary distinction of goodwill and favorable reputation through 60 years of use. *See id.* ¶¶ 16–17. Third, Mr. Chun's use of these trade dresses creates likelihood of confusion and misrepresentation. *Id.* ¶¶ 32–33. Accordingly, these factors favor entering default judgment for trade dress infringement.

### B. Sum of Money at Stake

Plaintiffs seek actual damages resulting from Chun's breach of contract (the Franchise Agreement); statutory damages for trademark infringement pursuant to the Lanham Act; and Plaintiffs' costs and attorney's fees incurred in connection with this action. *See* Motion at 10–14, 18. Specifically, Plaintiffs are seeking $43,307.09 in actual damages for breach of contract, as well as $15,000 in statutory damages for each of seven counts of trademark infringement, for a

9

total of $105,000 in statutory damages. *See id.* at 10, 13–14, 18. Thus, a reasonably large sum of money is at stake in this action. However, where "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Board of Trustees v. Core Concrete Const., Inc.*, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). Here, the Court finds the sum requested proportional to the conduct alleged, and thus this factor weighs in favor of default judgment.

### C. Remaining *Eitel* Factors

The remaining *Eitel* factors generally weigh in favor of entering default judgment against Mr. Chun. Should the motion be denied, Baskin-Robbins would be prejudiced because it would be denied the right to judicial resolution of its claims and would likely be without other recourse to recover for the harms inflicted by Mr. Chun and to prevent future infringement of its trademarks and ongoing breach of the Franchise Agreement. There is unlikely to be a dispute concerning material facts in this action because Mr. Chun has not answered. Moreover, Mr. Chun's default does not appear to be the result of excusable neglect—Baskin-Robbins has properly served the relevant filings in this lawsuit on Mr. Chun.

Based on the foregoing analysis, the Court finds that the factors in favor of granting default judgment outweigh the strong federal policy favoring decisions on the merits. The Court accordingly GRANTS Plaintiffs' motion for default judgment as to Mr. Chun's liability for (1) breach of contract; (2) trademark infringement in violation of 15 U.S.C. § 1114; (3) unfair competition in violation of 15 U.S.C. § 1125(a); (4) unfair competition and false advertising in violation of Cal. Bus & Prof. Code §§ 17200 & 17500 *et seq.*; and (5) trade dress infringement.

## V. PLAINTIFFS' REQUESTED RELIEF

Plaintiffs seek an award in the amount of Mr. Chun's actual profits for breach of contract and statutory damages for trademark infringement. *See* Motion at 10, 13. Plaintiffs also seek attorney's fees and costs pursuant to 15 U.S.C. § 1117(a). *Id.* at 14. Plaintiffs further seek a permanent injunction to prevent Mr. Chun's future infringement of its trademarks and violation of the Franchise Agreement. *Id.* at 15. In assessing remedies, the Court does not take allegations in the Complaint as true and will instead examine the evidence offered by Plaintiffs in support of

each form of requested relief. *Bittorrent, Inc. v. Bittorrent Marketing GMBH*, 2014 WL 5773197, at *11 (N.D. Cal. Nov. 5, 2014). In other words, a plaintiff must "prove up" her damages. *See Orange County Elec.*, 2012 WL 4120348, at *3. The plaintiff must "provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Id.* (internal quotation and citation omitted). "In order to 'prove up' damages, a plaintiff is generally required to provide admissible evidence (including witness testimony) supporting damage calculations." *Cannon*, 2011 WL 3267714, at *2.

### A. Actual Damages

Plaintiffs' Motion requests actual damages for breach of contract in the amount of $43,307.09 for outstanding franchise fees, advertising fees, late fees, interest and costs on unpaid dues, and other charges authorized in the Franchise Agreement. *See* Motion at 10. However, Plaintiffs' Complaint fails to adequately put Chun "on notice of the [$43,307.09 in actual] damages being sought against [him] so that he [could] make a calculated decision as to whether or not . . . to answer." *See Alameda County*, 2012 WL 3042696, at *1. Instead, for breach of contract, the Complaint merely identifies "monetary damages in an amount that has yet to be determined." Compl. ¶ 40. Indeed, Federal Rule of Civil Procedure 54(c) dictates that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that he may make a calculated decision as to whether or not it is in his best interest to answer." *See Alameda County*, 2012 WL 3042696, at *1 (citing *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008)); *Board of Trustees*, 2009 WL 1704677, at *3–*5.

On the other hand, in its Notice to Cure (that was provided separately to Chun and also attached to the Complaint), Plaintiffs notified Mr. Chun of an outstanding account balance in the amount of $17,157.56. Compl. ¶ 27; Notice to Cure, Ex. 2 to Compl. The Notice to Cure set forth outstanding "Franchise and Advertising Fees in the amount of $17,157.56." Notice to Cure at 1. The Complaint and Prayer for Relief likewise refer to the outstanding balance owed to Plaintiffs as a result of breach of the Franchise Agreement. Compl. ¶ 28, Prayer for Relief No. 5. The Court is

11

thus satisfied that Plaintiffs have met their notice requirement in proving up actual damages for Mr. Chun's outstanding fees in the amount of $17,157.56.

According to § 5.7 of the Franchise Agreement, Plaintiffs are also entitled to recover interest on outstanding fees. Franchise Agreement § 5.7. The Franchise Agreement awards simple interest at 1.5% per month from the date due, for an annual interest rate of 18%. *Id.* The Notice to Cure was issued to Defendant on June 25, 2018. Compl. ¶ 27; Notice to Cure, Ex. 2 to Compl. Thus, Defendant was on notice of the interest provision and could easily calculate the amount due by simple arithmetic. The Court accordingly awards Plaintiffs interest on the outstanding balance of $17,157.56 at 18% annum from June 25, 2018 through the date of this order in the amount of $3,266.05.

In sum, the Court finds that Plaintiffs' Complaint provides Defendant Chun with sufficient notice of actual damages only as to the outstanding balance of $17,157.56 plus interest identified in the Notice to Cure. In other words, Chun's decision as to whether it was in his best answer to answer Plaintiffs' Complaint was predicated upon a lesser figure than is now requested in Plaintiffs' Motion. Accordingly, the Court hereby GRANTS Plaintiffs' request for actual damages for breach of contract in the amount of $20,423.61 and DENIES Plaintiffs' remaining request for actual damages for breach of contract which are not apparent from the face of the complaint and its attachments.

### B. Statutory Damages

Plaintiffs next request statutory damages in the amount of $15,000.00 for each of seven counts of trademark infringement, for a total of $105,000.00 in statutory damages. *See* Motion at 13. As previously discussed, a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Plaintiffs' Complaint does not specify nor list the number of trademarks that Mr. Chun infringed for which statutory damages are sought. *See generally* Compl. Instead, the Complaint refers to "numerous federal registrations for the mark 'Baskin-Robbins' and related marks." *See, e.g.*, *id.* ¶ 13.

However, Plaintiffs did file and personally serve alongside the Complaint a "Report on the Filing or Determination of an Action Regarding a Patent or Trademark" that lists seven "patent or

trademark" numbers, *see* ECF 4, and thus provides notice as to the scope and number of trademarks at issue. The Court finds that therefore, Plaintiffs sufficiently provided Chun with reasonable "notice of the damages being sought against [him] so that he [could] make a calculated decision as to whether or not it [was] in his best interest to answer." *See Alameda County*, 2012 WL 3042696, at *1.

Under the Lanham Act, the Court can award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark . . . . as the court considers just." 15 U.S.C. §1117(c)(1). Generally, the Court has wide discretion in determining the amount of statutory damages appropriate. *Columbia Pictures Television, Inc. v. Krypton Broad. Of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001). Here, Plaintiffs request $15,000 per infringed mark, within the statutory range and range awarded by California courts for non-willful trademark infringement. *See Deckers Outdoor Corp. v. Verre*, 2010 WL 11597305 (C.D. Cal. May 27, 2010) (awarding non-willful trademark infringement damages of $20,000 per mark); *see also Leadership Studies, Inc. v. ReadyToManage, Inc.*, 2017 WL 2408118 (C.D. Cal. June 2, 2017) (awarding $100,000 per infringed mark in a default judgment). The Court finds the requested amount to be reasonable and proportionate to the purported violations. Accordingly, the Court hereby GRANTS Plaintiffs' request for statutory damages for trademark infringement of the seven listed trademarks in the amount of $105,000.

### C. Attorney's Fees

Plaintiffs seek reasonable attorney's fees and costs incurred in this action, pursuant to the Franchise Agreement or 15 U.S.C. §1117(a), "in an amount to be determined by separate fee application." *See* Motion at 14, 18. The Motion further states that should the Court find entitlement of attorney's fees, Plaintiffs will file a motion pursuant to Local Rule 54-5 after entry of final judgment. *See id.* at 14. Mr. Chun agreed to pay reasonable attorney's fees incurred in the enforcement of the Franchise Agreement or in the event of late payment. *See* Franchise Agreement §§ 5.7, 14.4.4. Under the Lanham Act, Plaintiffs are entitled to recover "the costs of the action," and attorney's fees in exceptional cases. 15 U.S.C. §1117(a). Plaintiffs have requested to file a motion for attorney's fees and costs within 21 calendar days of the instant

13

Order. *See* ECF 19-1 at 5. Plaintiffs' request for attorney's fees and costs is supported by statute and the Franchise Agreement. Accordingly, reasonable attorney's fees and costs are warranted, and Plaintiffs' request to file a motion for attorney's fees and costs within 21 days of the date of this Order is GRANTED.

### D. Permanent Injunction

Lastly, Plaintiffs seek a permanent injunction, including specifically that:

a. Defendant and his agents shall immediately cease holding themselves out as franchisees of Baskin-Robbins, and shall not directly or indirectly represent to the public that they are present or former franchisees of Baskin-Robbins;

b. Defendant and his agents shall immediately cease infringement of Plaintiffs' trademarks and trade name associated with the Baskin-Robbins system, and shall cease otherwise engaging in unfair competition with Baskin-Robbins; and

c. Defendant and his agents shall immediately follow the termination directives of the Franchise Agreement §§ 14.7 *et seq.*, including:

   i. Immediate cessation of operation of the Restaurant and presentations as a franchisee of Baskin-Robbins;

   ii. Immediate cessation of all use of Proprietary Marks, trade secrets, confidential information and manuals, and immediate cessation of indirect or direct participation in the use or benefits of the Baskin-Robbins system;

   iii. Return of all originals and copies of operating manuals, plans, specifications, and all other materials of Plaintiffs' in Defendant's possession relating to the operation of the Restaurant;

   iv. Upon Plaintiffs' request, agree to sell to Plaintiffs any or all of the furniture, fixtures, and equipment at the purchase cost when originally installed in the Restaurant, less a depreciation deduction computed on a straight-line basis over a ten (10) year useful life for the respective items (in no event less than 10 percent of original purchase cost);

   v. Upon Plaintiffs' request, assign to Plaintiffs any leasehold interest

| | |
|---|---|
| 1 | Defendant has in the Restaurant and Premises or any other agreement |
| 2 | related to Premises; |
| 3 | vi. Upon request, remove from Premises and return to Plaintiffs all indicia of |
| 4 | Baskin-Robbins Proprietary Marks; make such modifications or alterations |
| 5 | to the Restaurant and Premises as required in accordance to the Baskin- |
| 6 | Robbins System to distinguish the Restaurant and Premises from other |
| 7 | restaurants of Baskin-Robbins; disconnect any telephone listings containing |
| 8 | the Baskin-Robbins name; withdraw fictitious name registration containing |
| 9 | any part of Baskin-Robbins Proprietary Marks; and |
| 10 | vii. Permit Plaintiffs the right to enter the Premises for the purpose of making |
| 11 | required changes, at Defendant's expense. |

*See* Motion at 15–18; Proposed Order at 3–5, ECF 19-1; Franchise Agreement § 14.7. These requests for injunctive relief relate directly to Plaintiffs' breach of contract cause of action and are included in the terms of the Franchise Agreement. *See* Franchise Agreement §§ 14.7 *et seq*.

A plaintiff may be entitled to injunctive relief for a breach of contract claim under California law. *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 722 (2009). "If state law allows a party to seek injunctive relief, the federal standard then governs a court's exercise of discretion in determining whether to grant an injunction." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 13298075, at *12 (N.D. Cal. Aug. 31, 2015). As California law allows a party to seek injunctive relief, the Court will apply the federal standard in determining whether to issue a permanent injunction. *Id.* The traditional equity principles require the Court to inquire whether a plaintiff has demonstrated: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("Actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark

1 infringement action.").

The Court is satisfied that Plaintiffs have demonstrated irreparable injury from the use of its marks beyond the scope of its approval and supervision, and that such harms have no adequate remedy at law. Moreover, Defendant agreed to such injunctive relief by signing the terms of the Franchise Agreement. *See* Franchise Agreement §§ 14.7 *et seq.* The balance of hardships prong is thus satisfied, and the public interest would not be disserved by a permanent injunction. Accordingly, the Court GRANTS Plaintiffs' request for permanent injunctive relief.

## VI. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' motion for default judgment is GRANTED as to Defendant Chun's liability for (1) breach of contract; (2) trademark infringement in violation of 15 U.S.C. § 1114; (3) unfair competition in violation of 15 U.S.C. § 1125(a); (4) unfair competition and false advertising in violation of Cal. Bus. & Prof. Code §§ 17200 & 17500 *et seq*; and (5) trade dress infringement.

As to Plaintiffs' requested relief, the motion for default judgment is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED as to Plaintiffs' request for $20,423.61 in actual damages and interest for breach of contract. The Motion is DENIED as to Plaintiffs' remaining request for actual damages for breach of contract. Plaintiffs' request for statutory damages for trademark infringement in the amount of $105,000 is GRANTED. Plaintiffs are entitled to reasonable attorney's fees and costs and Plaintiffs' request to file a motion for attorney's fees and costs within 21 calendar days of the date of this Order is GRANTED.

IT IS FURTHER ORDERED THAT a separate injunction order shall issue on the following terms:

> 1. Upon service of this order, Defendant and his agents shall immediately cease holding themselves out as franchisees of Baskin-Robbins, and shall not directly or indirectly represent to the public that they are present or former franchisees of Baskin-Robbins.
>
> 2. Upon service of this order, Defendant and his agents shall immediately cease infringement of Plaintiffs' trademarks and trade name associated with

the Baskin-Robbins system, and shall cease otherwise engaging in unfair competition with Baskin-Robbins.

3. Upon service of this order, Defendant and his agents shall immediately follow the termination directives of the Franchise Agreement §§ 14.7 *et seq.*

4. Upon service of this order, Defendant shall immediately cease operation of the Restaurant and no longer represent to the public that he or the Restaurant is a franchisee of Baskin-Robbins.

5. Upon service of this order, Defendant shall immediately cease in all use of Plaintiffs' Proprietary Marks, trade secrets, confidential information and manuals, and shall immediately cease indirect or direct participation in the use or benefits of the Baskin-Robbins system.

6. Within 30 days of service of this order, Defendant shall return all originals and copies of operating manuals, plans, specifications, and all other materials of Plaintiffs in Defendant's possession relating to the operation of the Restaurant.

7. Upon Plaintiffs' request, Defendant will sell to Baskin-Robbins within 30 days any or all of the furniture, fixtures, and equipment at the purchase cost when originally installed in the Restaurant, less a depreciation deduction computed on a straight-line basis over a ten (10) year useful life for the respective items (in no event less than 10 percent of original purchase cost).

8. Upon Plaintiffs' request, Defendant will assign to Plaintiffs within 30 days any leasehold interest Defendant has in the Restaurant and Premises or any other agreement related to Premises.

9. Upon request, Defendant will remove from Premises and return to Plaintiffs within 30 days all indicia of Baskin-Robbins Proprietary Marks; make such modifications or alterations to the Restaurant and Premises as required in accordance to the Baskin-Robbins System to distinguish the Restaurant and Premises from other restaurants of Baskin-Robbins; disconnect any

telephone listings containing the Baskin-Robbins name; withdraw fictitious name registration containing any part of Baskin-Robbins Proprietary Marks.

10. Upon request, Defendant will permit Plaintiffs within 30 days the right to enter Premises for the purpose of making required changes, at Defendant's expense.

11. This Order shall be binding upon and inure to the benefit of the parties and all successors, assigns, parent entities, subsidiaries, officers, directors, members, shareholders, distributers, agents, affiliates, and all other persons who are in active concert or participation with anyone described herein.

12. The Court shall retain jurisdiction for the purposes of construing, modifying, and enforcing this Permanent Injunction.

The Court further ORDERS Plaintiffs to serve a copy of this order on Defendant Chun.

**IT IS SO ORDERED.**

Dated: July 16, 2019

_____
BETH LABSON FREEMAN
United States District Judge